IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

|  |  |  |
|---|---|---|
| BRYAN W. BECKMANN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 18-00503 ACK-RT |
| GORDON I. ITO, et al., | ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING THE STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND TO DISMISS THE SECOND AMENDED COMPLAINT; AND GORDON I. ITO AND KATHLEEN H. NAKASONE'S, IN THEIR INDIVIDUAL CAPCACITIES, SUBSTANTIVE JOINDERS

For the reasons set forth below, the Court GRANTS the Motion for Judgment on the Pleadings and to Dismiss the Second Amended Complaint filed by Defendants Department of Commerce and Consumer Affairs of the State of Hawaii; Gordon I. Ito and Kathleen H. Nakasone, in their official capacities; and Colleen L. Chun, Paul S.K. Yuen, and Martha C. Im, in their official and individual capacities, ECF No. 30, and GRANTS the substantive joinders thereto filed by Defendants Gordon I. Ito and Kathleen H. Nakasone, in their individual capacities, ECF Nos. 34, 37 (defendants, collectively, the "State Defendants;" and the motions, collectively, "Motion" or "Mot.").

FACTUAL BACKGROUND................................................1

PROCEDURAL BACKGROUND.............................................8

STANDARD.........................................................14

DISCUSSION.......................................................18

I.    The Substantive Joinders ..................................19

II.   Undisputed Grounds ........................................21

III.  Statute of Limitations and the Continuing Violation
      Doctrine ..................................................24

          a. Counts ONE through TEN..............................25

              1. The Limitations Period .........................25

              2. The Continuing Violation Doctrine ..............29

              3. The GEICO Case Ban is a Discrete Act ...........30

              4. Hostile Work Environment and the Continuing
                 Violation Doctrine.. ...........................32

              5. When the Limitations Period Commenced for the GEICO
                 Case Ban.. .....................................34

          b. Count THIRTEEN......................................37

IV.   Sovereign Immunity ........................................39

          a. Eleventh Amendment Sovereign Immunity Under the ADEA
             (Counts THREE and FOUR)............................39

          b. Eleventh Amendment Sovereign Immunity Against Chapter
             378 and Common Law Claims (Counts SEVEN through
             TWENTY-TWO.........................................41

          c. Punitive Damages...................................43

V.    Hawaii Workers' Compensation Statute (Counts ELEVEN
      through TWENTY) ...........................................44

          a. State and Official-Capacity Defendants.............44

b. Individual-Capacity Defendants........................46

VI.  Sufficiency of Allegations ...........................52

a. Tortious Interference with Employment (Count ELEVEN).53

b. Abuse of Authority (Count TWELVE)....................56

c. Ratification (Count FOURTEEN).......................57

d. Harassment (Count FIFTEEN)..........................59

e. Civil Conspiracy (Count TWENTY).....................60

VIII. Allegation of Procedural Due Process Violation........61

CONCLUSION.................................................62

The following facts are taken from Plaintiff's Second Amended Complaint and, at this stage, are accepted as true. Plaintiff Bryan W. Beckmann ("Beckmann") is employed in the Insurance Division of the State of Hawaii Department of Commerce and Consumer Affairs ("DCCA"). Beckmann brings this lawsuit alleging that five DCCA employees "deliberately target[ed] him because of his protected status as a Caucasian [and] over 40 . . . to achieve the singular goal of driving Plaintiff from State employment in violation of Federal and State anti-discrimination statutes, common law, and other rules and regulations . . . ." Second Amended Complaint ("SAC"), ECF No. 21, at 5.

## I. Events Concerning Beckmann's Hiring & Early Employment

Beckmann works as an Investigator within the Compliance and Enforcement ("C&E") Branch of the State of Hawaii DCCA's Insurance Division. SAC at 7.

Beckmann asserts that the discriminatory practices against him began immediately after he was hired in November 2012 as an Investigator III. SAC at 16. When Beckmann was offered the position, Defendant Ito, the Hawaii Insurance Commissioner, was absent and then-Chief Deputy Defendant Paul Yuen approved Beckmann's hire. SAC at 16. Shortly after Beckmann accepted the job offer, Defendant Ito requested to meet

with Beckmann over Skype.  SAC at 16.  During the call,
Defendant Ito "deliberately tried to make the job appear
unattractive so [Beckmann] would rescind his acceptance."  SAC
at 17.  Defendants Ito and Chun then conducted a criminal
background check of Beckmann through the FBI database.  Beckmann
asserts that this background check was an improper attempt to
locate information to prevent Beckmann from beginning his
position even though he had already submitted to two prior FBI
background checks.  SAC at 17.

Despite Defendants Ito's and Chun's attempts to keep
Beckmann from starting the job, he began work on March 4, 2013.
SAC at 17.  On Beckmann's first day, Defendant Ito commented
that Beckmann should not have been offered the position without
Defendant Ito's approval.  SAC at 17.  Beckmann understood this
to mean that "he was not welcome in the Division."  SAC at 17.

Beckmann asserts Defendant Chun next targeted him in
mid-2013 by investigating Beckmann's use of a LexisNexis
database to search his own name and his father's name.  SAC
at 19.  Although the investigation was dropped, Defendant Chun
instructed investigators not to work with Beckmann on companion
investigations and to forbid Beckmann from entering the secure
Fraud Branch space even though Beckmann's Filipina and Japanese
colleagues were permitted to do so.  SAC at 19-20.

When Beckmann continued to collaborate with investigators in the Fraud Branch, Defendant Chun reacted in anger. She directed investigators not to view a work site with Beckmann, made fraud investigators fearful of being seen with Beckmann and shunned female colleagues who liked Beckmann. SAC at 20.

## II. Beckmann's Prior Private Detective Business

Prior to beginning work with the DCCA Insurance Division, Beckmann had plans to open a private investigation firm in Hawaii. SAC at 15. Beckmann had obtained his Hawaii private detective license and created a website marketing his services to Hawaii. SAC at 15. When he applied for the position with the DCCA Insurance Division, Beckmann disclosed his private detective license and discussed his business website with his DCCA interviewer, Sam Thomsen. SAC at 16. As a condition of his employment, Beckmann agreed to and did obtain an opinion from the Hawaii State Ethics Commission to determine whether the private detective work would conflict with his State employment. SAC at 16, 18. The Hawaii State Ethics Commission counseled that Beckmann could not obtain new business as a private investigator and would be required to recuse himself from any investigations relating to existing clients. SAC at 18. Defendant Ito was informed of this opinion by Mr. Thomsen in June 2013. SAC at 18-19. Although Beckmann initially sought

reconsideration of the advisory opinion by the Hawaii State
Ethics Commissioner, he ultimately decided not to pursue a
private investigation business simultaneously with his State
employment because he "underestimated the time required to run a
private investigation firm as a second job." SAC at 19.

III. **The Investigation Against Beckman**

Three years later, in the summer of 2016, Defendant
Chun discovered Beckmann's website and reported the website to
Defendant Ito. SAC at 21. Defendant Chun then bragged to her
colleagues about the discovery of the website, indicating that
Defendant Ito would open an internal investigation into
Beckmann. SAC at 21.

Indeed, Defendant Ito opened an internal
investigation. SAC at 21. Beckmann asserts that "Defendant
Ito's goal [was] fabricating a case of employment misconduct
against Plaintiff." SAC at 21. All State Defendants were
included in the "bogus investigation." SAC at 21. The
investigation resulted in a Preliminary Investigation Report,
which recommended discipline and referral of the matter to the
Hawaii State Ethics Commission for review and handling. SAC at
22. Beckmann was never questioned on the matter; the Special
Investigation Unit was not involved to determine whether the
website was active; Beckmann was not taken up on his offer to
produce his redacted tax returns showing no income from the

investigation work; and Beckmann's webmaster was never interviewed. SAC at 23. Beckmann therefore asserts, "The inescapable conclusion is that no Defendant wanted to learn the answers, and risk laying waste to the investigation's flimsy foundation and destroying the Commissioner's carefully-laid discriminatory plan to rid his Division of Plaintiff." SAC at 23. According to Beckmann, the form of the investigation violated his right to due process under his union contract. SAC at 23.

Beckmann ultimately received a charge letter and was put on a 30-day paid suspension on August 11, 2016. SAC at 24-25. He was charged with offering and soliciting services through his website in violation of Insurance Division instructions and policy. SAC at 24. Defendant Nakasone contacted Beckmann's webmaster and, although the webmaster offered an interview, Defendant Nakasone declined. SAC at 25-26.

On August 18, 2016, Defendant Nakasone met with Beckmann and his union representative. SAC at 25. Defendant Nakasone reported that Defendant Ito was opening an ethics investigation regarding Beckmann's website. SAC at 26. That same day, Defendant Nakasone sent a letter to the Hawaii State Ethics Commission "urging it to open a second investigation" into Beckmann. SAC at 26. Defendant Im drafted the letter at

Defendant Ito's direction, and the letter was signed by Defendant Nakasone and approved by Defendant Yuen. SAC at 26.

Beckmann was instructed to return to work on September 9, 2016. SAC at 27. Because the investigation was ongoing, he was assigned to different duties. SAC at 27. Most notably, he was no longer involved in investigating cases, instead "relegated" to "a mind-numbing, undesirable assignment." SAC at 27. Beckmann took this as a "constructive[] demot[ion]." SAC at 27. When Beckmann returned, Mr. Thomsen—the now-colleague who had interviewed Beckmann for the DCCA Insurance Division position—indicated his belief to Beckmann that the charges against Beckmann were baseless. SAC at 27.

In the course of its investigation, the Hawaii State Ethics Commission interviewed Beckmann and others. SAC at 28. The Ethics Commission found insufficient evidence to support any violation and closed the investigation on October 20, 2016. SAC at 28. Despite this outcome, Defendant Ito did not restore Beckmann to full duty and Defendant Nakasone indicated that she intended to discipline Beckmann anyway. SAC at 28-29. Beckmann was not ultimately disciplined. SAC at 29.

On December 27, 2016, Mr. Thomsen restored Beckmann to handling complaints. SAC at 29. Defendant Nakasone nevertheless continued representing the investigation against Beckmann was still ongoing until January 6, 2017, around which

time Beckmann received a letter stating the investigation was concluded. SAC at 29-30.

**IV.   Beckmann's Ban from GEICO Casework**

Several of Beckmann's allegations in the SAC relate to disputes regarding his work on Government Employees Insurance Company ("GEICO") cases and a GEICO manager's personal displeasure with Beckmann. According to Beckmann, GEICO was unhappy with his "diligent efforts" investigating GEICO matters. SAC at 31. GEICO's General Manager, Defendant Timothy Dayton ("Dayton"), contacted numerous individuals at the DCCA Insurance Division seeking "to remove the pressure on GEICO." SAC at 31. Mr. Thomsen, Defendant Nakasone, and Defendant Yuen did not act on Defendant Dayton's calls. SAC at 31. Defendant Ito, however, removed Beckmann from GEICO cases after the call from Defendant Dayton in early 2017 and banned him from working on them until November 2017. SAC at 31-33.

**V.   The Lawsuit**

Based on this conduct, Beckmann brings twenty-two counts against some combination of (1) the DCCA; (2) Gordon I. Ito, individually and as Insurance Commissioner for the State of Hawaii; (3) Kathleen H. Nakasone, individually and as Chief Deputy Insurance Commissioner for the State of Hawaii; (4) Paul S.K. Yuen, individually and as Chief of the Legal Branch, Insurance Division for the State of Hawaii; and (5) Martha C.

Im, individually and as Staff Attorney of the Legal Branch, Insurance Division of the State of Hawaii (collectively, the "State Defendants").

Beckmann also brings claims against Defendant GEICO and GEICO's Hawaii General Manager, Defendant Dayton. Defendants GEICO and Dayton have filed separate Motions to Dismiss not addressed in this Order.[1/]

## PROCEDURAL BACKGROUND

Beckmann filed his Complaint in this action on December 27, 2018. ECF No. 1. He filed his First Amended Complaint on March 26, 2019, and filed the SAC on April 26, 2019. ECF Nos. 10, 21. In the SAC, Beckmann asserts twenty-two causes of action:

- COUNT ONE: Race-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42

---

[1/] Defendants Dayton and GEICO filed their Motions to Dismiss on April 30 and May 2, 2019, respectively. The hearings on these motions were delayed based on the motion for disqualification of Beckmann's attorney, Ms. Wilkowski. Beckmann's attorney has since been disqualified. ECF No. 99. Subsequently the Court filed a Minute Order stating Beckmann should notify the Court when he has obtained new counsel in order to proceed with hearings on these motions. ECF No. 108. Beckmann notified the Court he obtained counsel to proceed on the State Defendants' Motion, but not in relation to the Dayton and GEICO motions, suggesting the disqualification order does not apply to Ms. Wilkowski's representation as against Defendants Dayton and GEICO. ECF No. 109. The Court notes that the Order disqualifying Ms. Wilkowski appears to disqualify her from all matters in this case and, at this point, is still in place. If Mr. Earle Partington, who represented Beckmann at the hearing on the State Defendants' motion, intends to continue representation of Beckmann in this matter, as he suggested at that hearing, Beckmann should inform the Court so that Defendant Dayton and GEICO's motions may be scheduled.

U.S.C. § 2000e-2(a), against Defendant State of
Hawaii DCCA;

- COUNT TWO: Retaliation, in Violation of Title VII
  of the Civil Rights Act of 1964, 42 U.S.C.
  § 2000e-3(a), against Defendant State of Hawaii
  DCCA;

- COUNT THREE: Age-Based Discrimination in
  Violation of the Age Discrimination in Employment
  Act of 1976, 29 U.S.C. § 621, et seq. ("ADEA"),
  against Defendants DCCA, Ito, Nakasone, Chun, and
  Yuen;

- COUNT FOUR: Retaliation, in Violation of the
  ADEA, against Defendants DCCA, Ito, Nakasone,
  Chun, and Yuen;

- COUNT FIVE: Disparate Treatment, in Violation of
  Title VII of the Civil Rights Act of 1964, 42
  U.S.C. § 2000e-2(a)(l), against Defendant State
  of Hawaii DCCA;

- COUNT SIX: Hostile Work Environment, in Violation
  of Title VII of the Civil Rights Act of 1964, 42
  U.S.C. § 2000e-2(a)(l), against Defendant State
  of Hawaii DCCA, and individual Defendants Ito,
  Nakasone, Chun, and Yuen;

- COUNT SEVEN: Race-based Discrimination, in Violation of Hawaii Revised Statutes ("HRS") § 378-2(1)(A), against Defendant State of Hawaii DCCA, and individual Defendants Ito, Nakasone, Chun, and Yuen;

- COUNT EIGHT: Age-based Discrimination, in Violation of HRS § 378-2(1)(A), against Defendant State of Hawaii DCCA, and individual Defendants Ito, Nakasone, Chun, and Yuen;

- COUNT NINE: Retaliation, in Violation of HRS § 378-2(2), against Defendant State of Hawaii DCCA, and individual Defendants Ito, Nakasone, Chun, and Yuen;

- COUNT TEN: Aiding, abetting, inciting, compelling, or coercing discrimination, in Violation of HRS § 378-2(3), against Defendants State of Hawaii DCCA, and individual Defendants Ito, Nakasone, Chun, Yuen, and Im;

- COUNT ELEVEN: Tortious Interference With Employment, against Defendant employers GEICO and State of Hawaii DCCA, and individual Defendants Dayton, Ito, Nakasone, Chun, Yuen, and Im;

- COUNT TWELVE: Abuse of Authority, against Defendants State of Hawaii DCCA, and individual Defendants Ito, Nakasone, Chun, and Yuen;

- COUNT THIRTEEN: Slander, against Defendant Chun;

- COUNT FOURTEEN: Ratification, against Defendant employers State of Hawaii DCCA and GEICO, and Individual Defendants Ito, Nakasone, Chun, and Yuen;

- COUNT FIFTEEN: Harassment, against Defendant employers State of Hawaii DCCA and GEICO, and Individual Defendants Ito, Nakasone, Chun, Yuen, Im, and Dayton;

- COUNT SIXTEEN: Negligence, against Defendant employer State of Hawaii DCCA, and Individual Defendants Ito, Nakasone, Chun, Yuen, and Im;

- COUNT SEVENTEEN: Deliberate Indifference, against Defendant employers State of Hawaii DCCA and GEICO;

- COUNT EIGHTEEN: Respondeat Superior, against Defendant employers State of Hawaii DCCA and GEICO;

- COUNT NINETEEN: Negligent Supervision, against Defendant employers State of Hawaii DCCA and

GEICO, and Individual Defendants Ito, Nakasone, and Yuen;

- COUNT TWENTY: Civil Conspiracy, against Defendant employers State of Hawaii DCCA and GEICO, and Individual Defendants Ito, Nakasone, Chun, Yuen, Im, and Dayton;

- COUNT TWENTY-ONE: Intentional Infliction of Emotional Distress ("IIED"), against Defendant employers GEICO and State of Hawaii DCCA, and Individual Defendants Dayton, Ito, Nakasone, Chun, Yuen, and Im; and

- COUNT TWENTY-TWO: Negligent Infliction of Emotional Distress ("NIED"), against Defendant employers State of Hawaii DCCA and GEICO, and Individual Defendants Ito, Nakasone, Chun, Yuen, Im, and Dayton.

SAC at 34-37.

Defendants Department of Commerce and Consumer Affairs of the State of Hawaii; Gordon I. Ito and Kathleen H. Nakasone, in their official capacities; and Colleen L. Chun, Paul S.K. Yuen, and Martha C. Im, in their official and individual capacities, filed a Motion for Judgment on the Pleadings and To Dismiss the Second Amended Complaint on May 23, 2019. ECF No 30. Defendant Gordon I. Ito, in his individual capacity,

timely filed a Substantive Joinder to that motion on May 28,
2019.  ECF No. 34.  Defendant Nakasone, in her individual
capacity, timely filed a Substantive Joinder to that motion on
May 29, 2019.  ECF No. 37.  On September 4, 2019, Defendant Ito
filed a Statement of No Opposition to Defendant Nakasone's
Substantive Joinder.  ECF No. 78.  On September 9, 2019,
Beckmann filed an Opposition to the motion and the two
substantive joinders.  ECF No. 80 ("Opp.").  On September 10,
2019, Defendant Dayton filed a Statement of No Opposition to the
motion and two substantive joinders.  ECF No. 81.  On
September 11, 2019, Defendant GEICO filed a Statement of No
Opposition to the motion and two substantive joinders.  ECF
No. 85.  Defendants Department of Commerce and Consumer Affairs
of the State of Hawaii; Gordon I. Ito and Kathleen H. Nakasone,
in their official capacities; and Colleen L. Chun, Paul S.K.
Yuen, and Martha C. Im, in their official and individual
capacities, filed a Reply on November 7, 2019.  ECF No. 100.
Defendants Ito and Nakasone each filed a Reply on November 8,
2019.[2/]  ECF Nos. 102, 104.

---

[2/] The Court notes Defendant Ito's individual Reply correctly raises
Beckmann's failure to comply with local rules regarding the form and length
of motion papers in his Opposition brief.  ECF No. 104 at 1-2.  The Court
does not find sanctions for these failures appropriate at this time but
instructs Beckmann's counsel to be cognizant of the rules and properly comply
in all court filings going forward.

Separately, on August 15, 2019, Defendant Ito, in his individual capacity, filed a motion to disqualify Beckmann's attorney, Ms. Mary Wilkowski. ECF No. 65. That motion was granted in part and denied in part on November 6, 2019, resulting in the disqualification of Ms. Wilkowski. ECF No. 99. Because that Order was in force at the time the Motion and joinders were scheduled to be heard, the Court took the hearings off calendar to allow Beckmann to obtain new counsel. ECF No. 108. Beckmann obtained counsel to represent him at the hearing on the State Defendants' Motion, which was heard on December 5, 2019, at 11:00 a.m.

## STANDARD

### I. Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.

Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

In resolving a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  But "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice.  Twombly, 550 U.S. at 555.

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations.  OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## II.  Motion for Judgment on the Pleadings under Rule 12(c)

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Judgment on the pleadings is properly granted "when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and original alteration omitted).

Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.  Id. The Court must therefore assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see also Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir.

2012) (<u>Iqbal</u> applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent).

Judgment on the pleadings under Rule 12(c) is limited to material included in the pleadings, unless the Court elects to convert the motion into one for summary judgment. <u>Yakima Valley Mem'l Hosp. v. Dep't of Health</u>, 654 F.3d 919, 925 n.6 (9th Cir. 2011). Rule 12(d) gives the Court "discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." <u>Hamilton Materials, Inc. v. Dow Chem. Corp.</u>, 494 F.3d 1203, 1207 (9th Cir. 2007) (citation omitted).

The Court must accept as true the facts as pled by the non-movant, and will construe the pleadings in the light most favorable to the nonmoving party. <u>U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1053 (9th Cir. 2011); <u>Doyle v. Raley's Inc.</u>, 158 F.3d 1012, 1014 (9th Cir. 1998). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." <u>Harris v. Cty. of Orange</u>, 682 F.3d 1126, 1131 (9th Cir. 2012) (quotations and citation omitted).

Defendant Nakasone, in her individual capacity, is the only State Defendant who has filed an Answer.  The Motion is thus construed as a Motion for Judgment on the Pleadings as to Defendant Nakasone, in her individual capacity, and is construed as a Motion to Dismiss as to all remaining moving defendants.  Because the standards are substantially identical however, this construction does not impact the Court's analysis.

## DISCUSSION

The State Defendants seek dismissal of all twenty-two counts in Beckmann's SAC.  The State Defendants' arguments can be distilled down to the following points:

- Numerous counts are time-barred.

- Certain state counts are barred by sovereign immunity.

- Certain defendants do not meet the statutory requirements for liability.

- Beckmann failed to exhaust his administrative remedies.

- The pleadings contain insufficient facts to allege certain counts.

- Two causes of action are invalid.

- An exclusivity provision bars certain counts.

- Punitive damages are not permissible.

- Beckmann failed to exhaust contractual remedies.

<u>See</u> Mot.

## I.    **The Substantive Joinders**

Defendants Ito and Nakasone, in their individual capacities, each filed a "substantive joinder" to the Motion for Judgment on the Pleadings and to Dismiss under Local Rule 7.9.[3/] ECF. Nos. 34, 37.  Defendant Ito's Substantive Joinder was timely filed on May 28, 2019, five days after the Motion for Judgment on the Pleadings and to Dismiss was filed, and Defendant Nakasone's Substantive Joinder was timely filed on May 29, 2019, six days after the Motion for Judgment on the Pleadings and to Dismiss was filed.  Each Substantive Joinder attaches a supplemental memorandum, as Rule 7.9 requires.

Defendant Ito, in his individual capacity argues: (1) Acts prior to October 10, 2019 are time barred for Counts 6-9; (2) Counts 6-9 should be dismissed because Defendant Ito is not

---

[3/] At the time the substantive joinders were filed, the Local Rules permitted filing within seven days of the motion joined in pursuant to then-current Local Rule 7.9.  In September 2019, the Local Rules were updated, and substantive joinders are now governed by Local Rule 7.7, which requires filing within three days of the motion joined in.  The Court applies the Local Rules in effect at the time of filing.

At the time of filing, Local Rule 7.9 stated, in relevant part,
> Except with leave of court based on good cause, any substantive joinder in a motion or opposition must be filed and served within seven (7) days of the filing of the motion or opposition joined in. "Substantive joinder" means a joinder based on a memorandum supplementing the motion or opposition joined in.  If a party seeks the same relief sought by the movant for himself, herself, or itself, the joinder shall clearly state that it seeks such relief so that it is clear that the joinder does not simply seek relief for the original movant.

an "employer" and thus does not meet the statutory definition
for liability; (3) Plaintiff Beckmann fails to allege sufficient
facts to state a claim for Counts 7-9, 11, 14, 16, 19-22;
(4) Count 15 is not a valid cause of action; and (5) Defendant
Ito is entitled to dismissal of Counts 11, 14, 15, 16, 19,
and 20 under Hawaii's Workers' Compensation Law.[4/]

Defendant Nakasone, in her individual capacity,
argues: (1) Counts 3 and 4 should be dismissed because
supervisors cannot be held liable in an individual capacity for
ADEA violations; (2) Count 6 should be dismissed because all
acts prior to October 10, 2017 are time-barred, and because
Plaintiff Beckmann fails to allege facts supporting a hostile
work environment claim; (3) Counts 7-9 should be dismissed
because Defendant Nakasone is not an "employer" and thus does
not meet the statutory definition for liability; (4) Plaintiff

---

[4/] In his Reply, Defendant Ito, in his individual capacity, raises the
additional argument that Plaintiff Beckmann's Opposition attempts to expand
his SAC with regard to Counts 3, 4, 10, and 12.  Defendant Ito argues that
the SAC distinguishes the counts against individual-capacity defendants (as
opposed to official-capacity defendants) by including the term "Individual
Defendants."  Read this way, Plaintiff's SAC asserts Counts 3, 4, 10, and 12
against individual Defendants in their official, but not individual,
capacities.  Ito's Reply at 13-14; SAC at 35-36.  Beckmann's Opposition to
the State Defendants' Motion, however, refers Counts 3, 4, 10, and 12 against
the DCCA and the "Individual" Defendants.  Reply at 14; Opp. at 19, 20, 23,
28.  Defendant Ito argues this is an improper expansion of the SAC in
Beckmann's Motion.  Ito Reply at 13-14.  Because Beckmann, in various parts
of his SAC, sues each individual defendant in both his or her official and
individual capacity, the Complaint is not clear in which capacity each claim
is brought.  If Beckmann is attempting to expand his Complaint through his
Opposition to assert claims against additional Defendants not originally
asserted, this would be improper.  Regardless, each one of these Counts is
subject to dismissal against the individual-capacity defendants on other
grounds.

Beckmann fails to allege sufficient facts to state a claim for
Counts 16, 19, 21, and 22; and (5) Defendant Nakasone is
entitled to dismissal of Counts 11-20 under Hawaii's Workers'
Compensation Law.

Defendants Ito and Nakasone, in their individual
capacities, each seek dismissal of the entire Second Amended
Complaint against them, as do the defendants in the Motion for
Judgment on the Pleadings and to Dismiss.  Ito Joinder at 2, ECF
No. 34; Nakasone Joinder at 3, ECF No. 37.  Unless otherwise
specified, the Court refers to and rules on these arguments
collectively with the Motion for Judgment on the Pleadings and
to Dismiss.

## II.  Undisputed Grounds

Beckmann's Opposition disputes many of the grounds
raised by the State Defendants.  However, Beckmann concedes
certain arguments and the Court addresses those first.

In relation to Count 3, age-based discrimination in
violation of the ADEA, Beckmann acknowledges the State
Defendants are "partly correct" in that Kimel v. Florida Board
of Regents, 528 U.S. 62 (2000) does bar a claim against
Defendant the DCCA.  Opp. at 19.  Beckmann goes on to argue that
Kimel "does not similarly limit Plaintiff's claims against
Individual Defendants Ito, Nakasone, Chun and Yuen in either

capacity." Opp. at 19. Accordingly, the Court DISMISSES Count 3 as against Defendant DCCA.

In relation to Count 4, Retaliation in Violation of the ADEA, Beckmann merely "repeats [his] argument and factual support," and the Court therefore treats Count 4 the same as Count 3. Opp. at 20. Accordingly, the Court DISMISSES Count 4 as against Defendant DCCA.

In relation to Count 6, hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), Beckmann acknowledges that the "Individual Defendants correctly disclaim liability for having created a hostile work environment because they are not 'employers' under Title VII" but states this does not apply to "Defendant Employer DCCA." Opp. at 21. Accordingly, the Court DISMISSES Count 6 as against Defendants Ito, Nakasone, Chun, and Yuen, in both their individual and official capacities.

In relation to Count 7, race-based discrimination in violation of HRS § 378-2(1)(A), Beckmann acknowledges that the "Individual Defendants, in their official capacities, are protected from liability" and "individuals are exempt from liability for racial discrimination under Chapter 378-2(1)(A) because they are 'not employers,'" but he argues that the "DCCA

is not similarly insulated from liability." Opp. at 21.[5/]

Accordingly, the Court DISMISSES Count 7 as to Defendants Ito,
Nakasone, Chun, and Yuen, in both their individual and official
capacities.

In relation to Count 8, age-based discrimination in
violation of HRS § 378-2(1)(A), Beckmann's "response to this
challenge is the same as his response to Defendants' challenge
to Count 7." Opp. at 22. Accordingly, the Court DISMISSES
Count 8 as to Defendants Ito, Nakasone, Chun, and Yuen in both
individual and official capacities.

In relation to Count 9, retaliation in violation of
HRS § 378-2, Beckmann acknowledges that the "Individual
Defendants claim correctly that Haw. Rev. Stat. § 378-2(2)
exempts from liability individuals who retaliated against
Plaintiff because they are not 'employers,'" but "Defendant
Employer [DCCA] has no such defense." Opp. at 23. Accordingly,
the Court DISMISSES Count 9 against Defendants Ito, Nakasone,
Chun, and Yuen, in both their individual and official
capacities.

In relation to Count 10, aiding, abetting, inciting,
compelling, or coercing discrimination in violation of HRS

---

[5/] In <u>Lales v. Wholesale Motors Co.</u>, 133 Haw. 332, 343–44, 328 P.3d 341, 352–53 (2014), the Hawaii Supreme Court held that "Individual employees are [] not personally liable as 'employers' for harassment and retaliation claims under HRS §§ 378-2(1)(A) and 378-2(2)."

§ 378-2(3), Beckmann argues that "State Defendants claim incorrectly that not only the State, but its individual defendants, in their official capacities, are exempt from liability under Sovereign Immunity" and that "Defendants' argument related to State actors must fail." Opp. at 23. Beckmann goes on to block quote from case law describing the liability for individual employees under HRS § 378-2(3). Opp. at 23-24. The Court understands Beckmann to be acknowledging that state agency Defendant DCCA is exempt from liability and, accordingly, Count 10 is DISMISSED against Defendant DCCA.

In relation to Count 17, deliberate indifference, Beckmann acknowledges that the "State is correct" that "[d]eliberate indifference is not a State tort." Opp. at 33. Accordingly, Count 17 is DISMISSED as against Defendant DCCA.[6]

In relation to Counts 21 and 22, IIED and NIED, Beckmann fails to present any opposition to the State Defendants' Motion. Because Beckmann has not opposed the Motion as to these counts, the Court DISMISSES Counts 21 and 22 against all moving Defendants.

### III. Statute of Limitations and the Continuing Violation Doctrine

---

[6] Beckmann asserts Count 17 against Defendant GEICO as well as the DCCA. While it appears likely Beckmann's acknowledgment that deliberate indifference is not a viable tort in Hawaii would extend to GEICO, GEICO is a non-moving party and the Court therefore does not extend Beckmann's arguments beyond the scope in which they were made. Accordingly, Count 17 remains against Defendant GEICO.

### a. Counts ONE through TEN

#### 1. The Limitations Period

Counts 1 through 10 allege various discrimination charges under Title VII, the ADEA, and Hawaii state statutes. The State Defendants argue that any acts occurring before October 10, 2017, are time-barred based on 42 U.S.C. § 2000e-5(e)(1), which provides that the "charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."[7]  Mot. at 10-11.  Beckmann acknowledges the 300-day limitations period but argues "that the last occurrence in a pattern of ongoing discriminatory practice establishes its timeliness."  Opp. at 12.

---

[7] More fully, 42 U.S.C. § 2000e-5(e)(1) states:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Because Beckmann filed his administrative charge with the State agency, the Hawaii Civil Rights Commission in addition to the Equal Employment Opportunity Commission, the 300-day limitations period applies.  See Mot. at 10; Opp. at 12-13.

The parties fail to distinguish between the differing statutory authority that governs the various claims in Counts 1 through 10. Counts 1, 2, 5, and 6 are brought pursuant to Title VII, so the 300-day limitations period in 42 U.S.C. § 2000e-5(e)(1) applies. Counts 3 and 4, however, are brought pursuant to the ADEA. Those claims, then, are governed by 29 U.S.C. § 626(d), but are likewise subject to a 300-day limitations period running immediately prior to the filing of the Equal Employment Opportunity Commissioner ("EEOC") charge. See Richardson v. Hilton Resorts Corp., No. CV 18-00340 LEK-RLP, 2019 WL 1440248, at *4 (D. Haw. Mar. 29, 2019) (stating that under Title VII and the ADEA, "[c]omplainants must file a charge within 180 days of the alleged harassment, or 300 days if the charge is 'dual-filed' with a state agency with the power to redress the issue" (citing 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA)).

Beckmann also alleges discrimination claims under Hawaii state law (HRS § 378-2) in Counts 7 through 10. Defendants' Motion asserts that the same 300-day limitations period applies. But HRS § 368-11(c) provides a 180-day limitations period, and "Plaintiff's Hawaii state law claims under Hawaii Revised Statutes section 378-2 are only timely to the extent they are based upon events occurring on or after . . . 180 days prior to the filing of the HCRC Charge[]."

<u>Aoyagi v. Straub Clinic & Hosp., Inc.</u>, 140 F. Supp. 3d 1043,

1053 (D. Haw. 2015); <u>see also</u> <u>Greenwood v. Frost</u>, No. 19-CV-

00137-DKW-RT, 2019 WL 4620363, at *6 (D. Haw. Sept. 23, 2019)

(citing § 368-11(c) as the limitations period for claims under

§ 378-2).

Beckmann's SAC and Opposition assert he filed his

discrimination charge with the EEOC on August 6, 2018.  SAC at

6; Opp. at 13.  The State Defendants attach as Exhibit 1 to

their Motion the EEOC and Hawaii Civil Rights Commission

("HCRC") filings.[8/]  The EEOC Notice of Charge of Discrimination

is dated July 25, 2018, and the HCRC Charge of Discrimination is

dated September 21, 2018.  Regardless of whether the Court uses

the July 25, 2018, or August 6, 2018, date for the federal

claims limitations period, the only conduct alleged in the SAC

that would fall within the 300-day window is Defendant Ito's

alleged ban on Beckmann's investigation of GEICO complaints that

lasted until November 2017.  <u>See</u> Mot. at 10-11; Opp. at 12-13.

Beckmann appears to acknowledge this is the only alleged conduct

within the 300-day window, explaining that "the Complaint

alleges that Plaintiff was subjected to the Insurance

Commissioner's continuing adverse employment action,

specifically his unilateral ban on Plaintiff's investigation of

---

[8/] The EEOC charge is incorporated by reference into the SAC but the
HCRC charge is not.  <u>See</u> SAC at 6.  Regardless, as discussed, the difference
in dates does not affect which conduct falls outside the limitations period.

GEICO complaints that extended from January through November 2017, well within the 300-day window provided by federal statute, and well before he filed his EEOC Complaint on August 6, 2018." Opp. at 13. Beckmann then cites to the continuing violation doctrine in an attempt to encompass all prior conduct within the limitations period. Opp. at 13.

Before turning to the continuing violation doctrine, the Court notes that Beckmann has alleged no conduct whatsoever that occurred in the 180 days prior to his filing of the HCRC charges (regardless of whether the Court counts from the August 6, 2018 or September 21, 2018 date). The state statutory law claims are therefore easily dismissed. They cannot be saved by Beckmann's additional assertion that he "expects to elicit during discovery facts that establish Defendants maintained their ongoing discriminatory practices in violation of his statutory and common law claims well beyond the date of the Complaint." Opp. at 13. A motion for judgment on the pleadings and to dismiss challenges the sufficiency of the Complaint as-filed. Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). The Court cannot allow Plaintiff to go on a discovery fishing expedition in hopes that he will find additional conduct to sue for. In fact, as noted by the Court at the hearing, Plaintiff Beckmann had asked the Court to proceed forthwith to hear this Motion. ECF No. 109.

## 2.    The Continuing Violation Doctrine

The Supreme Court analyzed the continuing violation doctrine as it relates to employment discrimination practices in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).  The Supreme Court distinguished discrete discriminatory acts from hostile work environment claims.  "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Id. at 113. According to the Court, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[9/]  Id. at 113.

In contrast, the "very nature" of hostile work environment claims "involves repeated conduct."  Id. at 115. The unlawful practice "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  Id.  To determine whether a hostile work environment exists, the court may look to all the circumstances, including "component acts of the hostile work environment [that] fall outside the statutory time period." Id. at 116-17.  "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the

---

[9/] The Supreme Court in Morgan acknowledged that employees are permitted to file "charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed," and that employees could use "the prior acts as background evidence in support of a timely claim."  Morgan, 536 U.S. at 113.

hostile environment may be considered by a court for the purposes of determining liability."  Id. at 117; see also Cherosky v. Henderson, 330 F.3d 1243, 1246 (9th Cir. 2003) ("Morgan makes clear that claims based on discrete acts are only timely where such acts occurred within the limitations period, and that claims based on a hostile environment are only timely where at least one act occurred during the limitations period.").

Beckmann alleges that the continuing violation doctrine makes timely all of his Title VII claims, but Morgan limits the use of the continuing violation doctrine to hostile work environment claims.  Beckmann does not dispute that the only act alleged to have occurred within the limitations period is Defendant Ito's "unilateral ban on Plaintiff's investigation of GEICO complaints that extended from January through November 2017."  Opp. at 12-13; see also Mot. at 10-12.  All other conduct alleged is untimely for purposes of his discrimination and retaliation claims.  The Court next turns to whether the continuing violation doctrine applies to the GEICO case ban for purposes of Beckmann's hostile work environment claim.

### 3.    The GEICO Case Ban is a Discrete Act

Discrete discriminatory acts are those which may be actionable on their own, and include termination, failure to promote, denial of transfer, or refusal to hire.  Morgan, 536

U.S. at 110, 114.  In <u>Porter v. California Dep't of Corr.</u>, 419
F.3d 885, 893 (9th Cir. 2005), the Ninth Circuit found that
refusal to grant vacation requests, requiring an employee to be
tested for a condition by her own physician, threatening
disciplinary action, leaving a negative performance evaluation,
and instructing the employee to use a back entrance were all
discrete acts.  In <u>Cherosky v. Henderson</u>, 330 F.3d 1243, 1247
(9th Cir. 2003), the court held individualized decisions on
whether four employees should be granted an exception from a no-
respirator rule were "best characterized as discrete acts."

Discrete acts are distinguished from the harassment
that makes up hostile work environment claims.  In the hostile
work environment context, "a single act of harassment may not be
actionable on its own," and typically includes humiliating
comments and gestures.  <u>Morgan</u>, 536 U.S. at 115-16; <u>see also</u>
<u>Porter</u> 419 F.3d at 893 (a sexual proposition, numerous offensive
comments, yelling insults and obscenities, and spitting in an
employee's food were all non-discrete acts).  Discrete acts, on
the other hand, may be actionable on their own.

The GEICO case ban was a discrete act.  Like the
discrete acts in <u>Porter</u> and <u>Cherosky</u>, the ban was a particular
employment decision impacting the requirements for Beckmann's
work.  In fact, Beckmann himself contends the ban qualified as
an adverse employment action.  Opp. at 13.

### 4. Hostile Work Environment and the Continuing Violation Doctrine

Morgan emphasizes the difference between, on one hand, hostile work environment claims and, on the other hand, discrete acts of discrimination. Morgan, 536 U.S. at 115. Courts reading Morgan have had to determine whether Morgan permits a discrete act, clearly subject to its own limitations period, to nevertheless also be considered as part of a hostile work environment claim. Because the GEICO case ban is a discrete act, and because it is the only potentially-timely act alleged, that result becomes critical. The Court then turns to decide whether a discrete act may be used to support a hostile work environment claim.

Interpreting Morgan, the Ninth Circuit has held that courts must uphold "the dichotomy between discrete acts and a hostile environment" by requiring a timely non-discrete act in order to maintain a hostile work environment claim. Porter, 419 F.3d at 893. "If the plaintiff adequately alleges a timely non-discrete act, then he may be able to bring in other untimely non-discrete acts to establish a hostile work environment claim." Montoya v. Regents of Univ. of Cal., No. 09CV1279-MMA (JMA), 2010 WL 2731767, at *7 (S.D. Cal. July 9, 2010) (citing Porter, 885 F.3d at 893); see also Yonemoto v. Shinseki, 3 F. Supp. 3d 827, 845 n.10 (D. Haw. 2014) (raising in a footnote

that although "this court is bound by <u>Porter</u>," "<u>Porter</u> has been criticized to the extent it suggests that a hostile work environment claim must be based solely on non-discrete acts").

Since <u>Porter</u>, however, the Supreme Court has characterized its own holding in <u>Morgan</u>:

> The analysis for the limitations period turns on the nature of the specific legal claim at issue. In <u>Morgan</u>, the Court noted that even if a claim of discrimination based on a single discriminatory act is time barred, <u>that same act</u> could still be used as part of the basis for a hostile-work-environment claim, so long as one other act that was part of that same hostile-work-environment claim occurred within the limitations period.

<u>Green v. Brennan</u>, 136 S. Ct. 1769, 1781 n.7, 195 L. Ed. 2d 44 (2016) (emphasis added); <u>see also</u> <u>id.</u> at 1778 (citing <u>Morgan</u> as "holding that a hostile-work-environment claim is a single 'unlawful employment practice' that includes every act composing that claim, whether those acts are independently actionable or not"). This Court defers to the Supreme Court's description of its holding in <u>Morgan</u>. Because a discrete act may be used to support a hostile work environment claim, the continuing violation doctrine permits a court to rely on the timely discrete act in order to consider other untimely acts that make up the same single unlawful employment practice.[10]

---

[10] To state a claim for a hostile work environment, Beckmann must allege that "(1) [he] was subjected to verbal or physical conduct because of [his]
(Continued . . . )

### 5. When the Limitations Period Commenced for the GEICO Case Ban

Even so, the continuing violation doctrine fails to save Beckmann's hostile work environment claim because the GEICO case ban is itself not timely. The limitations period on the GEICO case ban commenced when the ban was enacted, and was not renewed each day the ban was in effect. Consequently, Beckmann has not asserted any timely act.

The limitations period on a discriminatory act begins to run when the plaintiff "has a complete and present cause of action" even if the effects of that violation continue. Green, 136 S. Ct. at 1777. "[I]n the context of employment discrimination, the Supreme Court recently emphasized that limitations periods begin to run when the 'discrete act' adverse to the plaintiff occurs—not from the date when the effects of [that act] were felt." Ngo v. Woodford, 539 F.3d 1108, 1109 (9th Cir. 2008) (quoting Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 627, 127 S. Ct. 2162, 2168, 167 L. Ed. 2d 982 (2007), superseded by statute (Jan. 29, 2009)).[11]

---

race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1122 (9th Cir. 2008) (alterations in original) (quoting Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003)).

[11] Although Ledbetter's holding, related to paycheck discrimination, was superseded by statute, that decision helps clarify the nature of present violations as opposed to continued effects of prior violations. See Pouncil v. Tilton, 704 F.3d 568, 580 (9th Cir. 2012) (quoting the same language from Ledbetter to draw that distinction).

For example, where an employee was denied tenure and "was offered a 1-year 'terminal' contract, with explicit notice that his employment would end upon its expiration," the limitations period began "at the time the tenure decision was made and communicated" and not at the expiration of employment one year later.  Delaware State Coll. v. Ricks, 449 U.S. 250, 258, 101 S. Ct. 498, 504, 66 L. Ed. 2d 431 (1980).  "That is so even though one of the effects of the denial of tenure—the eventual loss of a teaching position—did not occur until later." Id. (emphasis in original).

In Cherosky v. Henderson, 330 F.3d 1243, 1245-46 (9th Cir. 2003), several employees claimed discrimination when their employer denied their requests to wear respirators.  Although the denials occurred prior to the limitations period, the employees alleged the denial was "pursuant to an ongoing discriminatory policy" and thus timely under the continuing violation doctrine.  Id. at 1246.  The Ninth Circuit rejected the argument.  "[T]he alleged wrong here occurred and accrued when the policy was invoked to deny an individual employee's request" because "the heart of plaintiffs' complaint does not stem from the policy regarding the use of respirators, but rather from the individualized decisions that resulted from implementation of a policy."  Id. at 1247.

In <u>Pouncil v. Tilton</u>, 704 F.3d 568 (9th Cir. 2012),
the Ninth Circuit reviewed these and additional cases to
determine when the limitations period begins to run on a
decision or policy that creates ongoing consequences.  The court
concluded that "each time a policy is invoked to deny an
individual plaintiff's request, an independently wrongful,
discrete act occurs, a claim accrues, and the limitations period
begins to run."  <u>Id.</u> at 579.  But where the case involves "the
delayed, but inevitable, consequence of the original . . .
decision," no new act has occurred, and no new limitation period
begins.  <u>Pouncil v. Tilton</u>, 704 F.3d 568, 581 (9th Cir. 2012).
"[A] subsequent and separately wrongful act" is required.  <u>Id.</u>

        "[A] continuing violation is occasioned by continual
unlawful acts, not by continual ill effects from an original
violation."  <u>Garcia v. Brockway</u>, 526 F.3d 456, 462 (9th Cir.
2008) (quoting <u>Ward v. Caulk</u>, 650 F.2d 1144, 1147 (9th Cir.
1981)).  Beckmann here hinges all his discrimination claims on
the argument that because the last month of that ban fell within
the limitations period, his claims should be timely (despite the
fact the ban was enacted approximately 11 months prior to the
limitations period, in January 2017, SAC at 31, 33).  But
Beckmann had his "complete and present cause of action," <u>Green</u>,
136 S. Ct. at 1777, once the ban was enacted.  Beckmann has
alleged no subsequent additional conduct that would constitute a

new violation.  Beckmann's allegation of the GEICO case ban,

like the rest of his allegations, is therefore untimely.

For the reasons discussed, Counts 1 through 10 are

DISMISSED as untimely.[12/]

### b. Count THIRTEEN

Count 13 alleges slander against Defendant Chun.  The

State Defendants argue that the only possible fact alleged in

the SAC supporting a slander charge against Defendant Chun is

her report in 2016 to her supervisor that she had discovered

Beckmann's private investigation business website.  Mot. at 11.

Because Beckmann filed his initial Complaint on December 27,

2018, "unless the alleged Slander occurred in the last three

days of December 2016" it would be time-barred under the two-

year statute of limitations in HRS §§ 662-4, 657-7.  Mot. at 12.

Beckmann's Opposition appears to argue that his

slander claim is based on Defendant Chun's response to his

LexisNexis invoice in 2013 (a full five years prior to his

filing of the Complaint) and on Defendant Chun's report of

---

[12/] The State Defendants make an additional argument in relation to
Count 10.  They argue that because Defendant Im was not named in the
administrative claim filed with the HCRC and EEOC, Beckmann has failed to
exhaust his administrative remedies against her.  Mot. at 14.  Beckmann
argues that Defendant Im was involved in the same acts giving rise to the
EEOC charge, creating an inference that Defendant Im violated Title VII and
that she could have anticipated that she would be named in the Title VII
suit.  Opp. at 25-26.  Thus, Beckmann argues, his failure to include
Defendant Im's name in the charge does not preclude her inclusion as a
defendant here.  Opp. at 25-26.  Because Count 10 is untimely regardless, the
Court declines to rule on this argument.

Beckmann's website in 2016.  Opp. at 29.  Beckmann claims these two events are causally linked, and he appears to conclude that the continuing violation doctrine therefore makes both claims actionable.  <u>See</u> Opp. at 29-30.

But Beckmann fails to allege that either action fell within the two-year limitations period.  HRS §§ 657-4; 662-4. The actions in 2013 are well outside of that period, and Defendant Chun's discovery of Beckmann's website in the summer of 2016 likewise is outside the limitations period.  <u>See</u> SAC at 20-24.  To the extent that Beckmann generically refers to "earlier and later events" that "contributed to the conspiracy," those are properly part of his conspiracy (and not slander) allegations.  Opp. at 29.

Accordingly, Count 13 is DISMISSED.[13]

---

[13] The State Defendants further argue that Count 13 is insufficiently pled because Beckmann does not allege that Defendant Chun published a false and defamatory statement concerning Beckmann to a third party.  Mot. at 17-18.  The State Defendants are correct.  <u>See</u> <u>McNally v. Univ. of Hawaii</u>, 780 F. Supp. 2d 1037, 1058 (D. Haw. 2011) ("Hawaii views claims for slander and libel under the defamation rubric" and "[t]o prove defamation under Hawaii law" the first element requires "a false and defamatory statement concerning another").  The basis for Beckmann's slander claim against Defendant Chun is her investigation regarding Beckmann's use of the LexisNexis database to search his own and his father's name, and her informing others about Beckmann's website.  SAC at 19-21; Opp. at 29.  Beckmann challenges Defendant Chun's motives but he does not dispute that he performed the search or had the website.  Thus, there is no false statement on which to base a slander claim.

## IV. Sovereign Immunity

### a. Eleventh Amendment Sovereign Immunity Under the ADEA (Counts THREE and FOUR)

"[T]he Eleventh Amendment bars a damages action against a State in federal court" which "remains in effect when State officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985); see also Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999) ("The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court."). Beckmann's SAC sues the State defendants, in their official capacity, for damages.[14/] SAC at 37. Therefore, absent waiver of sovereign immunity, those claims are barred by the Eleventh Amendment.

Claims against State Defendants in their individual capacities are not barred by the Eleventh Amendment. Alden v. Maine, 527 U.S. 706, 757, 119 S. Ct. 2240, 2267–68, 144 L. Ed. 2d 636 (1999) ("[A] suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the

---

[14/] Beckmann's Prayer for Relief seeks compensatory damages, punitive damages, general damages, attorney's fees, costs, and disbursements, as well as "all other appropriate equitable relief, including prejudgment interest." SAC at 37. Although Beckmann makes a general reference to all other appropriate equitable relief, he does not appear to be seeking injunctive relief here.

officer himself, so long as the relief is sought not from the state treasury but from the officer personally.").

Claims against the State Defendants in their individual capacities are barred, however, because liability under the ADEA only lies against the employer.  It is puzzling that the State Defendants make this argument with respect to the Title VII claims against individual defendants, Mot. at 13, but the State Defendants fail to make the same argument with respect to the ADEA claims.[15/]  In fact, the very same case the State Defendants cite in relation to Title VII employer liability refers to the same restriction on ADEA claims.  "The liability schemes under Title VII and the ADEA are essentially the same in aspects relevant to this issue; they both limit civil liability to the employer."  Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993).

Kimel bars a claim under the ADEA against the DCCA because the DCCA is protected by sovereign immunity.  528 U.S. at 91.  "This holding, combined with the fact that the ADEA does not allow suits against individuals (and thus does not allow suits against state officials or supervisors), means that state

---

[15/] The State Defendants argue instead that sovereign immunity extends to all State Defendants under Kimel v. Florida Bd. of Regents, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000).  Mot. at 12-13.  Beckmann argues that "[c]ontrary to the State's broad assertions . . . Kimel does not similarly limit Plaintiff's claims against Individual Defendants Ito, Nakasone, Chun and Yuen in either capacity."  Opp. at 19.

employees may not bring claims under the ADEA." Stilwell v.
City of Williams, 831 F.3d 1234, 1245 (9th Cir. 2016).  Under
the binding authority laid out in Stilwell v. City of Williams,
Beckmann, a state employee, may not bring claims under the ADEA.
Counts 3 and 4 are therefore DISMISSED WITH PREJUDICE.

**b. Eleventh Amendment Sovereign Immunity Against Chapter 378 and Common Law Claims (Counts SEVEN through TWENTY-TWO)**

The State Defendants argue that the claims under HRS
Chapter 378 and the common law claims must be dismissed against
the DCCA and the individual defendants in their official
capacities because those defendants are protected by sovereign
immunity under the Eleventh Amendment.  Mot. at 22.  Beckmann
responds by providing a half-page block quotation to In re
Holoholo, 512 F. Supp. 889 (D. Haw. 1981), in which the court
held that the State of Hawaii had waived its sovereign immunity
in HRS § 662-2.  But that case is no longer good law and in fact
the Hawaii legislature has expressly rejected its holding.
Office of Hawai'ian Affairs v. Dep't of Educ., 951 F. Supp.
1484, 1491 (D. Haw. 1996) ("[I]n 1984 the Hawaii State
Legislature clarified that it rejects the holding of [In re
Holoholo].") (citing Act 135, § 1 Session Laws of 1984,
expressly rejecting In re Holoholo).

"Absent a state's unequivocal consent, the Eleventh
Amendment bars a federal court from entertaining a suit against

that state, or one of its agencies or departments, based on state law." Hall v. State of Hawaii, 791 F.2d 759, 761 (9th Cir. 1986). "Although Hawaii has waived its sovereign immunity as to some state tort and statutory claims, it has done so solely with respect to state court actions." Sherez v. State of Hawai'i Dep't of Educ., 396 F. Supp. 2d 1138, 1144 (D. Haw. 2005); see also Pahk v. Hawaii, 109 F. Supp. 2d 1262, 1268 (D. Haw. 2000) ("Although the State of Hawaii consents to being sued in tort actions in Haw. Rev. Stat. §§ 661-2 and 3, that consent applies only to cases brought in the state courts of Hawaii, not to cases brought in federal courts.").[16/]

The State and the official-capacity defendants are protected by Eleventh Amendment sovereign immunity from suit in federal court. Mukaida v. Hawaii, 159 F. Supp. 2d 1211, 1216 (D. Haw. 2001) (dismissing the Chapter 378 claims against the employee in his official capacity by referencing the court's prior dismissal "on Eleventh Amendment immunity grounds" of the "state law claims, brought under Chapter 378 of Hawaii Revised Statutes, against UH and the State" and holding a state employee

---

[16/] The State Defendants further argue the waiver of sovereign immunity expressly excepts claims for interference with contract and slander, and Counts 11 and 13 should therefore be dismissed. Mot. at 23-24. Although Count 11 is styled as a claim for tortious interference with employment, the State Defendants argue it falls within a claim for tortious interference with contract. Mot. at 23. The Court dismisses Counts 11 and 13 as against the state agency and official-capacity defendants with prejudice, and the State Defendants make no argument that state sovereign immunity would extend to the individual-capacity defendants. The Court therefore does not address that argument.

"in his official capacity has the same Eleventh Amendment immunity as the State"). While Counts 7 through 10 have already been dismissed as untimely, they are dismissed against the DCCA and official-capacity defendants WITH PREJUDICE.

The state law tort claims against the State agency and the state employees in their official capacity likewise may not be heard in this Court. While certain of Counts 10 through 22 have already been dismissed on other grounds, they are hereby dismissed as against the DCCA and official-capacity defendants WITH PREJUDICE.

### c. Punitive Damages

The State Defendants argue that even where the state has waived sovereign immunity as to certain claims, HRS § 662-2 expressly reserves its sovereign immunity as to punitive damages. Thus, the State Defendants argue, Beckmann's prayer for punitive damages should be dismissed against State agencies and official-capacity defendants. Mot. at 28-29.

The State Defendants are correct. HRS § 662-2 expressly states

> The State hereby waives its immunity for
> liability for the torts of its employees and
> shall be liable in the same manner and to the
> same extent as a private individual under like
> circumstances, but shall not be liable for
> interest prior to judgment or for punitive
> damages.

In addition to this federal court lacking jurisdiction over these claims, Beckmann's SAC further fails on the grounds that punitive relief is unavailable against the state employer and official-capacity defendants.

## V. Hawaii Workers' Compensation Statute (Counts ELEVEN through TWENTY)

### a. State and Official-Capacity Defendants

The State Defendants argue that Counts 11 through 20 should be dismissed against the official-capacity defendants based on the exclusivity provision in Hawaii's Workers' Compensation Law, HRS § 386-5. Mot. at 27.

HRS § 386-5 provides

> The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee . . . except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

Beckmann asserts no claims of sexual harassment or sexual assault, and thus his claims are subject to the exclusivity provision. See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Haw. 92, 109, 176 P.3d 91, 108 (2008) ("Inasmuch as Kamaka has alleged a claim for emotional distress, that does not arise out of sexual harassment or sexual assault, such claim is, pursuant to HRS § 386-5, barred.") (emphasis in original); see

also Chan v. Wells Fargo Advisors, LLC, 124 F. Supp. 3d 1045, 1057-60 (D. Haw. 2015).

Beckmann has two possible ways to bring certain claims around the exclusivity provision. First, Beckmann's slander claim is likely not subject to the exclusivity provision pursuant to the Hawaii Supreme Court's recent analysis in Nakamoto v. Kawauchi, 142 Haw. 259, 271-72, 418 P.3d 600 (2018), holding harm to reputation does not qualify as a work injury and is thus beyond the ambit of the Workers' Compensation Law. However, the official-capacity sovereign immunity analysis applies to this claim, and regardless, the claim is inadequately pled. See supra note 13.

Second, were Beckmann's charge with the HCRC timely, HRS § 368-17 would mean that any of his claims contained in his complaint to the HCRC would not be subject to the exclusivity provision.[17/] But as discussed above, none of the conduct Beckmann complains of occurred within the 180 days prior to filing his charge with the HCRC and thus HRS § 368-17 does not help Beckmann here.

---

[17/] HRS § 368-17 provides "Section 386-5 notwithstanding, a workers' compensation claim or remedy does not bar relief on complaints filed with the commission." Thus, where a plaintiff "properly filed his discrimination complaint with the commission within 180 days, pursuant to HRS § 368-11(c)," and, after obtaining a Right to Sue from the commission, "then brought his complaint," "[t]he law is explicit that 'a workers' compensation claim or remedy does not bar relief on claims filed with the commission.'" Furukawa v. Honolulu Zoological Soc., 85 Haw. 7, 18-19, 936 P.2d 643, 654-55 (1997). Here, Beckmann did not properly file his discrimination complaint with the commission within 180 days, and thus HRS § 368-17 does not help him.

**b. Individual-Capacity Defendants**

The State Defendants further argue that the individual-capacity State Defendants should be dismissed because Beckmann does not allege "willful and wanton misconduct" as required by HRS § 386-8. Mot. at 27. Beckmann acknowledges the "wilful and wanton misconduct" standard. Opp. at 17. He argues that the intentional torts "necessarily impl[y] 'wilful and wanton' conduct," and otherwise argues his allegations have met this standard. Opp. at 26-37.

Hawaii's Workers' Compensation Law states that an employee "shall not be relieved of that employee's liability as a third party, if the personal injury is caused by that employee's wilful and wanton misconduct." HRS § 386-8(k). The Hawaii Supreme Court has adopted a test to determine what constitutes wilful and wanton misconduct:

> [T]he term "wilful and wanton misconduct," as used in HRS § 386-8, includes conduct that is either: (1) motivated by an actual intent to cause injury; or (2) committed in circumstances indicating that the injuring employee (a) has knowledge of the peril to be apprehended, (b) has knowledge that the injury is a probable, as opposed to a possible, result of the danger, and (c) consciously fails to avoid the peril.

Iddings v. Mee-Lee, 82 Haw. 1, 12, 919 P.2d 263, 274 (1996). "[C]laims based on wilful and wanton misconduct must be proven by clear and convincing evidence." Id. at 14.

To the extent that Beckmann's SAC alleges claims of
intentional or reckless conduct by the individual-capacity
defendants, those claims qualify as wilful and wanton under the
HRS § 386-8(k).  Throughout the SAC, Beckmann alleges the
individual-capacity defendants acted with specific intent to
cause him injury.  Initially, describing each State Defendant,
Beckmann asserts each individual "act[ed] with discriminatory
intent."  SAC at 8-13 (stating same for each Defendants Ito,
Chun, Nakasone, Yuen, and Im).  Further, the crux of Beckmann's
complaint is that the State Defendants were engaging in all the
conduct described for the purpose of driving him from
employment.

Beckmann alleges that Defendant Ito attempted to
dissuade Beckmann for accepting employment by making the
position sound unattractive, SAC at 16-17; approved or directed
an unwarranted FBI background check, SAC at 17; that upon
learning of Beckmann's website, Defendant Ito set up private
meetings with Defendants Nakasone, Chun, Yuen, and Im relating
to illegitimate investigations of Beckmann, SAC at 21; directed
a letter be drafted to the Hawaii State Ethics Commissioner
regarding Beckmann's website, SAC at 26; and twice removed
important responsibilities from Beckmann's position, SAC at 27,
31.

Beckmann alleges that Defendant Chun performed an FBI criminal background check, SAC at 17; conducted an investigation into Beckmann's use of the LexisNexis database, SAC at 19-20; attempted to prevent colleagues from working with Beckmann, SAC at 20; and conducted a second investigation locating Beckmann's website, SAC at 20-21.

Beckmann alleges that once the investigation into his website commenced, Defendant Nakasone ignored contradictory evidence and charged him with misconduct, SAC at 23-26; threatened discipline despite no evidence of misconduct, SAC at 29; avoided exonerating Beckmann when no misconduct was found, SAC at 28-30; and in tandem with Defendant Ito removed important responsibilities from Beckmann's position during the investigation, SAC at 27.

Beckmann asserts Defendants Yuen and Im participated in the meetings set up by Defendant Ito to launch an improper investigation of Beckmann's website, SAC at 21; that the charge letter regarding his website was written by either Defendant Yuen or Im, SAC at 24; that the Preliminary Investigation Report regarding the investigation was prepared at Defendant Im's request and reviewed and edited by her, SAC at 22-23; that Defendant Im prepared a list of questions for Defendant Nakasone to confirm the insurance services offered on Beckmann's website, SAC at 24; that the letter to the Hawaii State Ethics

Commissioner urging it to open an investigation into Beckmann's website was drafted by Defendant Im and approved by Defendant Yuen, SAC at 26; and that the letter stating the Insurance Division's investigation into Beckmann's website had concluded was drafted by either Defendant Yuen or Im, SAC at 30.

Beckmann asserts all this conduct was motivated by each Defendant's actual intent to cause Beckmann injury. Because the allegations of the SAC are taken as true at this stage and Beckmann has alleged a multitude of intentional conduct, the Court finds the pleadings satisfy the wilful and wanton standard except as to the torts based on negligence.

To the extent that Beckmann's SAC alleges claims of negligent conduct by individual defendants acting within the scope of their employment, those claims are barred. <u>Ragasa v. Cty. of Kaua'i</u>, No. 14-00309 DKW-BMK, 2015 WL 5472866, at *5 (D. Haw. Sept. 15, 2015) ("the Hawaii Workers' Compensation Act bars claims based on negligence"); <u>English v. City & Cty. of Honolulu</u>, No. CV 04-00108 SOM/KSC, 2005 WL 8157820, at *9 (D. Haw. Dec. 15, 2005) ("Because NIED claims involve negligent conduct," that conduct "does not rise to the level of culpability necessary for purposes of the 'wilful and wanton' misconduct exception in section 368-8" and therefore the NIED claims "asserted against the individual Defendants for actions

they took in their capacities as English's co-employees acting within the scope of their employment" were dismissed.).

To the extent that Beckmann's claims are based on the actions (negligent or otherwise) of the individual defendants taken outside their capacity as employees, those claims are permissible. "When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of employment a legal liability to pay damages on account thereof, the injured employee . . . may claim compensation under this chapter and recover damages from that third person." Haw. Rev. Stat. § 386-8(a) (emphasis added); see also Hun v. Ctr. Properties, 63 Haw. 273, 277, 626 P.2d 182, 186 (1981) ("[P]laintiffs have the right to sue in negligence or other torts against a third party, in addition to the remedies under the worker's compensation laws."); Abadilla v. Iwata, 130 Haw. 300, 308 P.3d 1231 (2013) (unpublished) (remanding where "the ICA held that Defendant, as a co-employee of Plaintiff, was protected from liability based on a theory of negligence" but "made no separate determination as to whether a genuine issue of material fact existed regarding whether Defendant was liable to Plaintiff based on a theory of negligence in a capacity other than that as co-employee").

All allegations in Beckmann's SAC relate to conduct by the individual defendants undertaken in the course of their employment.  Beckmann alleges that "[e]ach Defendant was the principal and/or agent and/or partner and/or alter ego and/or employee and/or employer and/or co-conspirator of each of the other Defendants and, in some manner, legally liable for the unlawful discriminatory conduct and damages at issue."  SAC at 6.  Beckmann further alleges that "[e]ach Defendant was at all relevant times acting within the course and scope of one or more of such relationships and with the express and/or implied knowledge, direction, approval and/or ratification of each of the other Defendants."  SAC at 6.  Beckmann may not simultaneously argue that the employer itself—the DCCA—was at all relevant times aware, directing, approving, and/or ratifying the actions of each employee in his or her individual capacity, and that the individual defendants were acting outside the scope of their employment.

Accordingly, Counts 16 for negligence and 19 for negligent supervision are dismissed against the individual-capacity state defendants.  Count 22 for negligent infliction of emotional distress, already dismissed based on Beckmann's

failure to oppose it, would otherwise be dismissed here under
the same analysis.[18/]

## VI.    Sufficiency of Allegations

The State Defendants argue that they "are entitled to
judgment on the pleadings on the entire Second Amended Complaint
since it only presents legal conclusory phrases without factual
allegations to support them."  Mot. at 15.  More specifically,
the State Defendants argue that Beckmann does not allege any
facts showing "any significant adverse employment action or that
[Beckmann] was treated less favorably than others after October
10, 2017," which they argue is the only relevant time period for
the employment discrimination claims, and therefore Counts 1
through 10 should be dismissed.  Mot. at 15-17.

Counts 1 through 10 have already been dismissed as
time-barred.[19/]  The State Defendants argue that the counts for
slander, negligence, negligent supervision, intentional

_____

[18/] The State Defendants further argue the Count 16 negligence claim is
insufficiently pled because Beckmann "simply does not identify any duty the
State Defendants owed to the Plaintiff, what act or omission any of them
committed and what actual damage the Plaintiff sustained as a result."  Mot.
at 18.  Because the claim as against the official-capacity defendants is
barred by sovereign immunity and the claim as against the individual-capacity
defendants is barred by Hawaii's Workers' Compensation Law, the Court does
not undertake an analysis of the relevant duty here.  The State Defendants
also argue that the Count 19 negligent supervision claim is insufficiently
pled because Beckmann does not allege that the employee of the defendant was
acting outside the scope of his or her employment.  Mot. at 19.  As stated
above, the Court agrees, but has already dismissed on other grounds.
[19/] The State Defendants assert statute of limitations arguments in
relation to Counts 1-10 and 13, but not in relation to the remaining tort
claims.  Accordingly, the Court does not address the statutes of limitations
applicable to the remaining claims.

infliction of emotional distress, and negligent infliction of
emotional distress are insufficiently pled.  The Court has
already dismissed these claims.[20/]

Beckmann's claims as to tortious interference with
employment (Count 11), abuse of authority (Count 12),
ratification (Count 14), harassment (Count 15), and civil
conspiracy (Count 20) remain as to the individual-capacity State
Defendants.[21/]  The Court turns to those claims now.

### a. Tortious Interference with Employment (Count ELEVEN)

The State Defendants construe the tortious
interference with employment claim as a tortious interference
with contract claim.  Mot. at 23.  Beckmann appears to agree
with this characterization in his Opposition, where he lays out
the elements of a tortious interference with contract claim.
Opp. at 27.

Under Hawaii law, the elements of tortious
interference with contractual relations are: "(1) a contract
between the plaintiff and a third party; (2) the defendant's

---

[20/] The Court found slander untimely and insufficiently pled, and the
three negligence claims barred by Hawaii's Workers' Compensation Law.  The
Court further dismissed the IIED and NIED claims based on Beckmann's failure
to oppose the State Defendants' Motion as to these counts.  See Mot. 19-21.

[21/] Except for Count 15 (harassment), which the State Defendants contend
is not a valid cause of action, Mot. at 21, the State Defendants' two
arguments on these claims as they relate to the individual-capacity
defendants are (1) "State Defendants are entitled to judgment on the
pleadings on the entire Second Amended Complaint since it only presents legal
conclusory phrases without factual allegations to support them," Mot. at 15;
and (2) that the State Defendants' behavior was not wilful and wanton and
thus the Workers' Compensation Law bars the claim, Mot. at 27.

knowledge of the contract; (3) the defendant's intentional
inducement of the third party to breach the contract; (4) the
absence of justification on the defendant's part; (5) the
subsequent breach of the contract by the third party; and (6)
damages to the plaintiff." Meridian Mortg., Inc. v. First Haw.
Bank, 109 Hawaii 35, 44, 122 P.3d 1133, 1142 (2005) (emphasis
omitted) (citing Weinberg v. Mauch, 78 Hawaii 40, 890 P.2d 277
(1995); see also Kahala Royal Corp. v. Goodsill Anderson Quinn &
Stifel, 113 Haw. 251, 268 n.17, 151 P.3d 732, 749 (2007)
(quoting same).

As Beckmann himself states in his Opposition, a
tortious interference claim "requires a state of mind or motive
more culpable than mere intent." Opp. at 27 (quoting Hawaii
Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 113 Haw. 77, 116,
148 P.3d 1179, 1218 (2006)). It requires "the intentional doing
of a harmful act without legal or social justification or
excuse, or, in other words, the wilful violation of a known
right." Opp. at 27 (quoting Chow v. Alston, 2 Haw. App. 480,
484, 634 P.2d 430, 434 (1981)); see also Locricchio v. Legal
Servs. Corp., 833 F.2d 1352, 1358 (9th Cir. 1987); Wieck v. CIT
Bank, N.A., No. CV 16-00596 JMS-RLP, 2018 WL 5779485, at *4 (D.
Haw. Nov. 2, 2018).

It is not clear whether Beckmann intends to assert
that each State Defendant breached his employment contract, or

that only Defendants Ito, Chun, Im or Nakasone breached his

employment contract, or that another Defendant third party—

presumably the DCCA—breached his employment contract.[22/] The

third element of tortious interference with contractual

relations requires the inducement of a _third-party_ to breach the

contract, and Beckmann may not bring a tortious interference

claim against the same party that breached the employment

contract (for which a breach of contract claim would be the

appropriate vehicle).

Because Beckmann's employment contract was with the

DCCA, the Court understands Beckmann to allege the individual

defendants induced the DCCA to breach his employment contract.

But the SAC fails to explain what the terms of Beckmann's

employment contract were, how those terms were breached, and how

the individual defendants induced that breach.

In his Opposition, Beckmann asserts that the breach

was "changing the material terms of his employment," Opp. at 28,

but the Court cannot find material changes to the terms of

Beckmann's employment contract in the absence of any allegations

---

[22/] "Defendant DCCA supervisors, including, but not necessarily limited to Defendants Ito, Chun, and Nakasone, either intentionally induced or orchestrated the inducement of Defendant [t]hird parties to breach Plaintiff's contract by changing the material terms of his employment. Before discovery opens, Plaintiff cannot confirm that Defendant Commissioner ran a 'daisy chain' (such that he induced Defendant Fraud Administrator who induced Defendant Chief Deputy who induced Defendant Legal Branch Chief, who induced his Staff Attorney to breach Plaintiff's employment contract[)]. It appears likely that Defendant Chief Deputy (Nakasone) breached Plaintiff's contract." Opp. at 27-28.

regarding what the terms of his employment contract were.

Beckmann further argues in his Opposition that "the benefit of his employment bargain" was "to work as an attorney/highly-trained investigator without interference," Opp. at 28, but does not argue this benefit was a specific term of his employment contract, nor does he cite to any factual allegation supporting such a suggestion.  Notably, Beckmann was paid for his services throughout the duration of his allegations.  SAC at 25.

Because Beckmann has not alleged what the terms of his employment contract were, he has not sufficiently alleged any breach thereof.  The Court therefore DISMISSES Count 11, tortious interference with contractual relations, against all moving defendants.

### b. Abuse of Authority (Count TWELVE)

Beckmann does not assert the basis for his abuse of authority claim.  Abuse of authority has been recognized as a consideration in holding officials liable for the violation of a plaintiff's rights but not as an independent cause of action. See Raymond v. Cty. of Kauai, No. CV 15-00212 ACK-RLP, 2017 WL 2815059, at *7 (D. Haw. June 26, 2017) (stating that in a § 1983 case, abuse of authority may be "a theory for a municipal liability claim" or a "component[] of a municipal liability claim," but is "not [a] separate § 1983 claim"); see also Minton v. Quintal, 131 Haw. 167, 184-85, 317 P.3d 1, 18-19 (2013)

(where two employees alleged the City abused its authority, the court found "the City is not permitted to exercise its authority to manage its facilities in a manner that would be in derogation of an individual's rights under the Hawaiʻi Constitution" and turned to analyze the asserted constitutional violations).

It is not obvious that abuse of authority is a valid state tort,[23] and this district has held "no 'abuse of authority' claim is available under Title VII."  Sandowski v. Nielsen, No. CV 17-00469 SOM-RLP, 2018 WL 4265159, at *6 (D. Haw. Sept. 6, 2018).  Absent any authority for this cause of action, it is DISMISSED.

### c. Ratification (Count FOURTEEN)

"[I]n Hawaiʻi, 'ratification' is defined as 'the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.'"  Ass'n of Apartment Owners of Maalaea Kai, Inc. v. Stillson, 108 Haw. 2, 13-14, 116 P.3d 644, 655-56 (2005) (citing Maui Fin. Co. v. Han, 34 Haw. 226, 230 (1937) and quoting Restatement of the Law of Agency § 82); see also Sharples v. State, 71 Haw. 404, 406, 793 P.2d 175, 177 (1990) ("The employer's liability under a ratification theory requires

---

[23] Variations of the phrase "abuse of authority" are occasionally mentioned in court opinions under Hawaii law, but the Court is not aware of any authority acknowledging a Hawaii state tort as such.

that the act complained of be done on behalf of or under the
authority of the employer, and there must be clear evidence of
the employer's approval of the wrongful conduct.").

Beckmann does not make clear what specific acts were
ratified by which specific Defendants.  Beckmann states that
each State Defendant "personally directed, expressly ratified or
tacitly endorsed[] the acts and omissions set forth," SAC at 8-
13, but this statement standing alone is too conclusory to state
a claim for ratification.

The Court cannot discern from Beckmann's SAC any
wrongful conduct performed on behalf of Defendants Chun or Yuen.
See also Opp. at 31 ("It appears likely that Defendants
Commissioner and Chief Deputy were the main ratifiers.").  The
claims against these individual-capacity defendants are
therefore DISMISSED.

Beckmann does specifically allege that Defendants at
times acted at the direction or with the consent and knowledge
of Defendant Ito (SAC at 17, Defendant Chun conducted the
background check at the direction or with the consent and
knowledge of Defendant Ito; 21, suggesting Defendant Ito
ratified Defendant Chun's investigation and location of
Beckmann's website; 26, Defendant Ito directed a letter be
written to the Hawaii State Ethics Commissioner, involving
Defendants Nakasone and Yuen).  Beckmann also suggests that

Defendant Nakasone ratified the conduct of Defendants Yuen and
Im in relation to the charge letter given to Beckmann and the
subsequent closing letter.  SAC at 24, 30.  But all of
Beckmann's claims relating to the acts supposedly ratified have
been dismissed.

Further, there are no other remaining claims against
any moving defendant.  Without any predicate wrongful act
sufficiently alleged, the ratification claim is DISMISSED.

### d. Harassment (Count FIFTEEN)

The State Defendants assert there is no tort of
harassment in Hawaii.  Mot. at 21 (citing <u>Sabat v. Kurashige</u>,
2005 WL 3236414 (Haw. App. 2005) (unpublished), noting that
"[a]lthough Sabat is unpublished, it may be cited as
establishing the law of the pending case" pursuant to "HRAP Rule
35(c)(1).").  Beckmann argues harassment is a state tort, citing
to <u>Lales v. Wholesale Motors Co.</u>, 133 Haw. 332, 343, 328 P.3d
341, 352 (2014).  Opp. at 31.  "In fact, Haw. Rev. Stat. § 378-
2(1)(A) holds employers strictly liable for the harassing
conduct of its agents and supervisors."  Opp. at 31.

Since Beckmann asserts in his Opposition that the
basis for his harassment claim is under <u>Lales</u> and § 378-2, the
Court analyzes the claim in that way.  As discussed above, and
acknowledged by Beckmann himself in relation to Counts 7, 8, and
9, § 378-2(a)(1)-(2) applies to conduct by employers, not

conduct by individual employees.  Beckmann says as much in his
Opposition.  "There is no indication that in proscribing
harassment and retaliation by employers, the legislature also
sought to address the conduct of individual employees."  Opp. at
31 (quoting Lales, 133 Haw. at 346.).  Further, as discussed
above, the claims under Chapter 378 are untimely.

The harassment claim is DISMISSED as against
individual defendants.  The DCCA and official-capacity
defendants have already been dismissed on sovereign immunity
grounds.

### e. Civil Conspiracy (Count TWENTY)

Hawai'i does not recognize an independent cause of
action for "civil conspiracy."  Rather, a civil conspiracy
action is derivative of other wrongs.  See, e.g., Chung v.
McCabe Hamilton & Renny Co., 109 Haw. 520, 530-31, 536, 128 P.3d
833, 843-44, 849 (2006); Weinberg v. Mauch, 78 Haw. 40, 49, 890
P.2d 277, 286 (1995).  The Hawai'i Supreme Court has defined
civil conspiracy as the "combination of two or more persons [or
entities] by concerted action to accomplish a criminal or
unlawful purpose, or to accomplish some purpose not in itself
criminal or unlawful by criminal or unlawful means."  Robert's
Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 982 P.2d 853,
881 n.28 (Haw. 1999) (quotations and citations omitted),

superseded by statute on other grounds as stated in Haw. Med.
Ass'n v. Haw. Med. Serv. Ass'n, Inc., 148 P.3d 1179 (2006).

The civil conspiracy claim has already been dismissed
as against the official-capacity defendants and DCCA based on
sovereign immunity.  At this point, all of Beckmann's claims as
against Defendants Ito, Nakasone, Chun, Yuen, and Im have been
dismissed, and there is thus no claim from which to derive a
civil conspiracy claim as against them.  See Lopeti v. All.
Bancorp, No. CV 11-00200 ACK-RLP, 2011 WL 13233545, at *16 (D.
Haw. Nov. 4, 2011) (finding that because "the Court is
dismissing Plaintiffs' claims against the moving Defendants"
that "Plaintiffs civil conspiracy claim cannot survive the
Motion to Dismiss Complaint.").  Further, while Beckmann alleges
the defendants conspired against him because of his race and
age, he largely fails to allege facts from which to draw that
conclusion—he simply asserts it was so.

As currently alleged, the civil conspiracy claim is
insufficiently pled and is DISMISSED.

## VII. Allegation of Due Process Violation

In his Complaint, Beckmann alleges that the State
Defendants violated his right to due process under his union
contract.  SAC at 23.  The State Defendants argue that any
claims based on this allegation must be dismissed because
Beckmann was required to exhaust the remedies in his collective

bargaining agreement before he can allege violations of his rights under that agreement. Mot. at 29.

Although Beckmann refers to the due process violation in his factual allegations, none of Beckmann's twenty-two counts alleges a due process violation. To the extent that Beckmann has alleged a discrete act of discrimination for the 2016 investigation, it has been dismissed as time-barred.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion, ECF No. 30, and the substantive joinders, ECF Nos. 34, 37, as summarized below. Any amended complaint must be filed within thirty days of the issuance of this Order.

- COUNT ONE: Race-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) against Defendant State of Hawaii DCCA is DISMISSED WITHOUT PREJUDICE as untimely.

- COUNT TWO: Retaliation, in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) against Defendant State of Hawaii DCCA is DISMISSED WITHOUT PREJUDICE as untimely.

- COUNT THREE: Age-Based Discrimination in Violation of the ADEA against Defendants DCCA,

Ito, Nakasone, Chun and Yuen is DISMISSED WITH
PREJUDICE.

- COUNT FOUR: Retaliation, in Violation of the ADEA
  against Defendants DCCA, Ito, Nakasone, Chun and
  Yuen is DISMISSED WITH PREJUDICE.

- COUNT FIVE: Disparate Treatment, in Violation of
  Title VII of the Civil Rights Act of 1964, 42
  U.S.C. § 2000e-2(a)(1), against Defendant State
  of Hawaii DCCA is DISMISSED WITHOUT PREJUDICE as
  untimely.

- COUNT SIX: Hostile Work Environment, in Violation
  of Title VII of the Civil Rights Act of 1964, 42
  U.S.C. § 2000e-2(a)(1), is DISMISSED WITH
  PREJUDICE against individual and official-
  capacity Defendants Ito, Nakasone, Chun, and
  Yuen.  It is DISMISSED WITHOUT PREJUDICE as to
  Defendant DCCA as untimely.

- COUNT SEVEN: Race-based Discrimination, in
  Violation of Haw. Rev. Stat. § 378-2(1)(A),
  against Defendant State of Hawaii DCCA, and
  Defendants Ito, Nakasone, Chun, and Yuen, in both
  individual and official capacities, is DISMISSED
  WITH PREJUDICE.

- COUNT EIGHT: Age-based Discrimination, in Violation of Haw. Rev. Stat. § 378-2(1)(A), against Defendant State of Hawaii DCCA, and Defendants Ito, Nakasone, Chun, and Yuen, in both individual and official capacities, is DISMISSED WITH PREJUDICE.

- COUNT NINE: Retaliation, in Violation of Haw. Rev. Stat. § 378-2(2), against Defendant State of Hawaii DCCA, and Defendants Ito, Nakasone, Chun, and Yuen, in both individual and official capacities, is DISMISSED WITH PREJUDICE.

- COUNT TEN: Aiding, abetting, inciting, compelling, or coercing discrimination, in Violation of Haw. Rev. Stat. § 378-2(3), against Defendant State of Hawaii DCCA, and official-capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITH PREJUDICE; and against individual-capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITHOUT PREJUDICE.

- COUNT ELEVEN: Tortious Interference with Employment, against Defendant State of Hawaii DCCA, and official-capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITH

PREJUDICE; and against individual-capacity
Defendants Ito, Nakasone, Chun, Yuen, and Im is
DISMISSED WITHOUT PREJUDICE.

- COUNT TWELVE: Abuse of Authority, against
Defendant State of Hawaii DCCA, and official-
capacity Defendants Ito, Nakasone, Chun, and Yuen
is DISMISSED WITH PREJUDICE; and against
individual-capacity Defendants Ito, Nakasone,
Chun and Yuen is DISMISSED WITHOUT PREJUDICE.

- COUNT THIRTEEN: Slander, against Defendant Chun
in her official capacity is DISMISSED WITH
PREJUDICE; and in her individual capacity is
DISMISSED WITHOUT PREJUDICE.

- COUNT FOURTEEN: Ratification, against Defendant
State of Hawaii DCCA, and official-capacity
Defendants Ito, Nakasone, Chun, and Yuen is
DISMISSED WITH PREJUDICE; and against individual-
capacity defendants Ito, Nakasone, Chun, and Yuen
is DISMISSED WITHOUT PREJUDICE.

- COUNT FIFTEEN: Harassment, against Defendant
State of Hawaii DCCA, and official-capacity
Defendants Ito, Nakasone, Chun, Yuen, and Im—is
DISMISSED WITH PREJUDICE; and against individual-

capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITHOUT PREJUDICE.

- COUNT SIXTEEN: Negligence, against Defendant State of Hawaii DCCA, and official-capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITH PREJUDICE; and against individual-capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITHOUT PREJUDICE.

- COUNT SEVENTEEN: Deliberate Indifference, against Defendant employers State of Hawaii DCCA is DISMISSED WITH PREJUDICE.

- COUNT EIGHTEEN: Respondeat Superior, against Defendant employer State of Hawaii DCCA is DISMISSED WITH PREJUDICE.

- COUNT NINETEEN: Negligent Supervision, against Defendant employer State of Hawaii DCCA and official-capacity Defendants Ito, Nakasone, and Yuen is DISMISSED WITH PREJUDICE; and against individual-capacity Defendants Ito, Nakasone, and Yuen is DISMISSED WITHOUT PREJUDICE.

- COUNT TWENTY: Civil Conspiracy, against Defendant employer State of Hawaii DCCA, and official-capacity Defendants Ito, Nakasone, Chun, Yuen,

and Im is DISMISSED WITH PREJUDICE; and against individual-capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITHOUT PREJUDICE.

- COUNT TWENTY-ONE: Intentional Infliction of Emotional Distress (IIED), against Defendant employer State of Hawaii DCCA, and official-capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITH PREJUDICE; and against individual-capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITHOUT PREJUDICE.

- COUNT TWENTY-TWO: Negligent Infliction of Emotional Distress (NIED), against Defendant employer State of Hawaii DCCA, and official capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITH PREJUDICE; and against individual capacity Defendants Ito, Nakasone, Chun, Yuen, and Im is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, January 3, 2020.



_____
Alan C. Kay
Sr. United States District Judge


Beckmann v. Ito, et al., Civ. No. 18-00503 ACK-RT, Order Granting the State Defendants' Motion for Judgment on the Pleadings and to Dismiss the Second Amended Complaint; and Granting Gordon I. Ito and Kathleen H. Nakasone's, in Their Individual Capacities, Substantive Joinders.